Elizabeth Deal *vs.* D. M. Osborne & Co. and others.

November 29, 1889.

Chattel Mortgage—When Mortgagee may take Possession.—Where a chattel mortgage contains an express or implied stipulation that the mortgagor shall retain possession of the property until default in the conditions of the mortgage, and likewise contains a provision authorizing the mortgagee to take possession "whenever he deems himself insecure," the latter has no right arbitrarily to take possession of the property before default of the mortgagor, but can only take it for just cause, based upon the actual existence of facts constituting a reasonable ground for believing himself insecure. Laws 1879, *c.* 65, § 2.

Replevin—Judgment—Damages.—In replevin, where the plaintiff's title or right of possession is legally divested after suit brought and before trial,

he can, as against the owner or person entitled to the possession, recover only damages for the unlawful detention up to the time his title or right of possession was divested. He is not entitled to judgment for the return of the property, or for its value.

Same—Mortgagor against Mortgagee—Damages.—As against a mortgagee who has unlawfully taken possession of the mortgaged property, the alternative value which the mortgagor is entitled to recover, in case a return of the property cannot be had, is only the value of his interest in it; that is, the value of the property less the amount of the mortgage.

Appeal by defendants from an order of the district court for Traverse county, *C. L. Brown,* J., presiding, refusing a new trial, the action having been tried before *Stearns,* J., (acting for the judge of the 16th district,) and a jury.

*G. D. Emery* and *Russell, Calhoun & Reed,* for appellants.

*J. W. Reynolds,* for respondent.

MITCHELL, J. Action of replevin. The material facts were that defendants bought and held three chattel mortgages executed by plaintiff on six horses, to secure the payment of a note for $250 and interest, payable November 1, 1888, all of which contained stipulations, express or implied, that as long as the conditions of the mortgages were fulfilled the mortgagor should remain in possession of the property. Each of the mortgages also contained a provision that if any attempt should be made to dispose of the property, or if at any time the mortgagee should deem himself insecure, it should be lawful for him to take possession of the property, and hold or sell the same, and out of the proceeds retain the amount of the note, interest, and expenses; and one of them provided that this might be done in case the property should be further incumbered. On November 10, 1887, defendants took possession under these mortgages, claiming the right to do so—*First,* because plaintiff had in September, 1887, executed another mortgage to Wells, Schroeder & Co.; and, *second,* under the "insecurity" clause. On November 14th plaintiff brought this action to recover possession of the property, claiming that it had been prematurely and unlawfully taken by defendants. The property remained in the custody of the sheriff under the writ of replevin, pending proceedings for rebonding it by defendants, from November 14th

to December 19th, during which time the horses were kept by him in plaintiff's barn, where they were cared for by her or her husband. During this time, and on December 5th, plaintiff executed another mortgage on the property to one Cater, to secure a note for $500, payable March 5, 1888, in which she described the property as being in her possession and free from all incumbrances. This mortgage also provided that if any attempt should be made to dispose of or further incumber the property, or if the mortgagee should at any time deem himself insecure, he might take possession and sell the property, and out of the proceeds retain the amount of his note, interest, and expenses. On the 19th of December the defendants gave a bond for the purpose of retaining possession of the property during the pendency of this action; but on the next day, and while the property was still in plaintiff's barn, Cater took it on his mortgage, and has ever since retained it, or sold it. Plaintiff has never paid any part of defendants' mortgages, on which there was due, principal and interest, some $290. Nor is there any claim that the Cater mortgage for $500 and interest has ever been paid or satisfied, in whole or in part, unless out of the property in controversy, of which he took possession December 5th, as already stated. There was some evidence introduced as to subsequent negotiations between Cater and defendants in reference to a settlement of their respective rights in the property, and of an offer or tender by the former to the latter of a certain sum to pay defendants' mortgages; but this was a matter entirely between themselves, and is wholly irrelevant to the present suit between plaintiff and defendants. The trial of this case (subsequent to March 5, 1888) resulted in a verdict for plaintiff for a return of the property, or, in case a return could not be had, for its full value, ($450,) and $150 special damages for its detention from November 10, 1887, to the date of trial.

It requires nothing more than this statement of facts to show that the verdict was not in accordance with the legal rights of the parties, and could only have resulted either from an imperfect presentation of defendants' case by counsel, or from error on part of the court, or both. Of course, the primary issue in the case was whether the defendants had a right, on November 10th, to take the prop-

erty on their mortgages, either because of its further incumbrance by plaintiff by executing the Wells, Schroeder & Co. mortgage, or under the general "insecurity" clause. We find no error on part of the court in the manner of the submission of this issue to the jury. The evidence showed that after the execution of the Wells, Schroeder & Co. mortgage, the defendants' assignor, then the owner of defendants' mortgages, with full knowledge of the fact, waived the right to take possession on that ground, and took additional security for his debt. The court instructed the jury, in substance, that under the "insecurity" clause the defendants had no right, before the maturity of the debt secured by the mortgages, arbitrarily to take possession of the mortgaged property, but could only take it for just cause, based upon the actual existence of facts constituting a reasonable ground for a belief on their part that they were insecure. This is in accordance with the provisions of Laws 1879, *c.* 65, § 2, which we think was intended to apply to just such provisions in mortgages as the one now under consideration. In fact, if it does not apply to such cases, it is difficult to conceive of any to which it will apply. It had been frequently held by courts, in the absence of any such statute, that such a clause made the mortgagee sole judge of the happening of the contingency upon which he might take possession, and vested in him an absolute discretion to take possession whenever he chose, regardless of whether or not he had any reasonable grounds for considering himself insecure. We think the object of the statute was to cut off any such arbitrary right, and to provide that where a chattel mortgage contains an express or implied stipulation that the mortgagor is to retain possession of the property until default in the payment of the debt, the mortgagee shall have no right arbitrarily to declare that he deems himself insecure, and take possession, but can do so only on just or reasonable grounds for such belief, based on facts. And as bearing upon the question, we think it was entirely proper to show that the defendants bought up these mortgages, and took possession of the property, for the avowed purpose of forcing plaintiff's husband to pay or secure a claim which they held against him.

But the court, in substance, charged the jury that, if they found

that the taking of the property by defendants on November 10th was unlawful, the plaintiff was entitled to a verdict for the possession of the property, or for its full value in case a return could not be had. In this we think the court erred. Assuming that defendants' taking was wrongful, the execution by plaintiff of the Cater mortgage on December 5th was a breach of the conditions of defendants' mortgages, which, on and after that date, entitled them to take possession of the property, and hold it or sell it, and apply the proceeds to payment of their note. On these facts we fail to see how plaintiff was entitled to recover anything except damages for the unlawful detention of the property from November 10th to December 5th. In replevin, where a plaintiff's title or right of possession is legally divested after suit brought and before trial, he can, as against the owner or person entitled to the possession, recover nothing beyond costs, and such damages as he may have sustained up to the time his title or right of possession was divested; and the court will always hear evidence to show such change in the ownership or right of possession which makes it improper to award a return, or full value as damages for a failure to make return. But even if the execution of the Cater mortgage did not give defendants the right to the possession of the property, yet clearly the alternative value which plaintiff was entitled to, in case a return could not be had, was not the full value of the property, but merely of her interest in it, which was the value less the amount of defendants' mortgages, analogous to the rule which obtains in actions for wrongful conversion. *Cushing* v. *Seymour,* 30 Minn. 301, (15 N. W. Rep. 249;) *Torp* v. *Gulseth,* 37 Minn. 135, (33 N. W. Rep. 550.) Otherwise a plaintiff, in case he collected the judgment for the alternative value, would have the full value of the mortgaged property without having paid the mortgage. Of course, if he had a return of the specific property, he would hold it, as before, subject to the lien of the incumbrance. For this error in the charge of the court a new trial must be had.

We have made no reference to the taking of the property by Cater on his mortgage (which became due before the trial of this action) as bearing upon plaintiff's right to recover the property or its value, because it is unnecessary for the decision of this appeal, and also

because it may well be doubted whether there is any exception or assignment of error sufficient to raise the question.

Order reversed.