STATE ex rel. MICHAEL NORRIS et al. vs. DISTRICT COURT FIRST JUDICIAL DISTRICT.

Argued Nov. 17, 1892. Decided Jan. 16, 1893.

**Appeals from Orders.**

An *ex parte* order granting an injunction is not appealable, the remedy being, in the first instance, by application to the court granting such order. Hence an appeal from such an order, and the filing of a *supersedeas* bond, is not effectual to stay or suspend the operation of the order.

**If Judge is Disqualified.**

If the judges of the district court in the district where an injunction of the court has been disobeyed are disqualified from acting, proceedings to punish for such contempt may be had in an adjoining judicial district.

Questions of Fact Decided on a Motion, how Reviewed.

> Proofs *held* sufficient to sustain the conclusion of the court as to such disqualification.

Condemnation Proceedings against Cotenants.

> Condemnation proceedings, under the law of eminent domain, against a part only of several tenants in common, confers no right to take the property for railroad purposes as against the other cotenants.

Contempt of Court, Punishment of.

> The fact that a contempt is a misdemeanor, and punishable by indictment, does not forbid summary proceedings therefor before the court. The statute authorizing this is not unconstitutional.

*Certiorari* issued October 5, 1892, to the District Court First Judicial District, *Williston*, J., to review proceedings taken against Michael Norris and Samuel Manice, relators, for contempt of court in disobeying a writ of injunction.

Jacob R. Myers, Henry H. Myers and Benjamin F. Myers, three brothers, were in August, 1892, owners in fee of one undivided third of thirteen lots in Martin's Division in Duluth. The Duluth Transfer Railway Company surveyed and located its railway across these lots and employed the Calumet Construction Company to grade and complete its road. This Construction Company sublet the work to Foley, Grant & Guthrie. They in turn sublet the grading to W. P. Ryan, and he sublet a portion to Michael Norris and Samuel Manice. The Railway Company attempted to acquire the right of way for its railroad over these lots. It filed its petition and obtained an order appointing commissioners to appraise damages. The Myers brothers appealed to this court from the order. The commissioners however proceeded to appraise the damages and made their award, and the Railway Company paid the amount into court, and its contractors commenced to grade the road across these lots. The Myers brothers, on September 12, 1892, commenced an action against the Railway Company and the Construction Company and all the subcontractors to enjoin and restrain them from grading and constructing the railroad across the lots. They obtained from *Hon. Ira B. Mills,* Judge of the Fourteenth Judicial District, then holding court at Duluth, an order *ex parte* for a preliminary injunc-

tion, and the writ was on September 13, 1892, issued and duly served. The defendants on the next day served notice of appeal to this court from the order granting the injunction, and gave a *supersedeas* undertaking. Norris and Manice then resumed the work of grading for the railway.

On September 22, 1892, at Pine City, the plaintiffs presented to *Hon. F. M. Crosby,* Judge of the First Judicial District, affidavits showing the issuing and service of the preliminary injunction and the subsequent doings and construction work of the defendants, and stating that the two Judges of the Eleventh Judicial District were both pecuniarily interested in the construction of this Terminal Railway, and obtained from Judge Crosby an order, that Norris and Manice show cause on September 26, 1892, at Stillwater, Minnesota, before *Hon. W. C. Williston,* the other judge of the First Judicial District, why they should not be punished for contempt in disobeying the preliminary writ of injunction.

On the day appointed, a hearing was had before *Judge Williston,* and he determined that defendants Norris and Manice were guilty of contempt of court, and imposed a fine of $100 upon each of them payable to the Clerk of Court in St. Louis county, for the use and benefit of that county. They then obtained this writ of *certiorari,* and the proceedings were certified to this court for review.

*McCordic & Crosby* and *J. L. Washburn,* for relators.

Neither the District Court of the First Judicial District, nor any judge thereof, had any jurisdiction in the premises; either to grant the order to show cause, or to hear and determine the same, or to adjudge the relators to be in contempt, and impose upon them a fine. 1878 G. S. ch. 64, § 5. No showing was made that the judges of the Eleventh Judicial District were interested in this matter, except the presentation of an affidavit stating that Judges *Stearns* and *Ensign* were directors of, and interested in the West Duluth Land Company, and that this company had made a contract with the Duluth Transfer Railway Company, under which latter company, through mesne contractors, the relators were constructing a railroad over the lands of Myers brothers. The question whether they are

interested in the contempt proceedings depends on the construction of this contract. It provides for the sale of a portion of a terminal railroad built by the West Duluth Land Company and of a right of way over certain of their lands. The contract is dated November 1, 1890, and by its terms it has long since been fully performed. The lands which the relators were enjoined from entering upon are not mentioned in the contract in any way whatever. The interest which disqualifies a judge from acting, must be a pecuniary interest in the result of the proceedings. *Sjoberg* v. *Nordin*, 26 Minn. 501.

Even if Judges *Stearns* and *Ensign* were disqualified from acting, there was no showing of disqualification on the part of Judge *Mills*, who made the order allowing the writ of injunction, and who is also a judge of the District Court of the Eleventh Judicial District. Laws 1887, ch. 100; Laws 1889, ch. 151.

The *ex parte* order of Judge *Mills* in granting the writ of injunction was appealable. *Hoffman* v. *Mann*, 11 Minn. 364, (Gil. 262;) *Schurmeier* v. *First Div. St. Paul & Pac. R. Co.*, 12 Minn. 351, (Gil. 228;) 1858 C. S. ch. 71, § 11; Laws 1861, ch. 22; 1866 G. S. ch. 86, § 6; 1878 G. S. ch. 86, § 6; *Gale* v. *Seifert*, 39 Minn. 171; *Andrews* v. *Love*, 46 Kan. 264; *Bennett* v. *Hetherington*, 41 Iowa, 142.

The order granting the injunction having been duly appealed from, and a *supersedeas* bond having been given under 1878 G. S. ch. 86, § 10, the operation of the order was suspended during the pendency of the appeal. *Genet* v. *President D. & H. Canal Co.*, 113 N. Y. 472; *Hovey* v. *McDonald*, 109 U. S. 150; *Howe* v. *Searing*, 6 Bosw. 684; *State* v. *Johnson*, 13 Fla. 33.

The writ of injunction was void, as the court had no power to grant it, and it was not incumbent upon the relators to obey it. The premises involved had been duly acquired by the Railway Company by condemnation proceedings. This *ex parte* injunction amounted therefore to an attempt to dispossess a party in possession of his own premises. A court of equity cannot change the possession of land in conflict, until the merits have been passed upon. The order granting such a writ in this case is void from the beginning, and no punishment should be administered for its disobedience. *Arnold* v.

*Bright,* 41 Mich. 207; *Toledo, A. A. & N. Mich. Ry. Co.* v. *Detroit, L. & N. R. Co.,* 61 Mich. 9; *McCombs* v. *Merryhew,* 40 Mich. 721; *Spofford* v. *Bangor & Bucksport R. Co.,* 66 Maine, 51.

The provisions of the statute under the authority of which it is sought to adjudge and determine the relators to be in contempt and punish them therefor, is unconstitutional and inoperative, and under the same no judgment of contempt can be sustained and no punishment administered. The act complained of, is embraced in 1878 G. S. ch. 87, § 1, subd. 5, and is by statute declared to be a misdemeanor. Penal Code, § 122, subd. 4. If a misdemeanor, it is a crime, and punishable as such. 1878 G. S. ch. 87, §§ 3, 12; Penal Code, §§ 3, 4; *State* v. *Becht,* 23 Minn. 411.

*R. R. Briggs,* for respondents.

The relators justify their disobedience of the injunction by claiming that the Duluth Transfer Railway Company had completed condemnation proceedings, and that a right of way over the interest of the Myers brothers had vested in said Railway Company prior to the performance of the work by relators on said land. The commissioners were appointed June 28, 1892. Myers brothers appealed from said order, and filed *supersedeas* bond on July 9, 1892. The award was made by the commissioners July 12, 1892. Such order appointing commissioners was appealable. There was therefore no valid award, no complete condemnation proceedings on the part of said Railway Company.

Upon an appeal from an order, proceedings on it are stayed and rights under it saved as of the date of the filing of the *supersedeas* bond. *Woolfolk* v. *Bruns,* 45 Minn. 96; *State* v. *Duluth St. Ry. Co.,* 47 Minn. 369.

No judge of any of the courts of this state can sit in any cause in which he is interested, either directly or indirectly, or in which he would be excluded as a juror. 1878 G. S. ch. 64, § 4. The contract with the West Duluth Land Company means that the Transfer Railway Company will bring the land of the West Duluth Land Company into intimate connection with the entire system of railroads at the head of the lakes. This contract was devised to enrich the Land

Company by making its lands available for warehouses, mills, and similar improvements. Every line of said contract is laden with the idea of profit through the instrumentality of the Transfer Company. The Land Company is interested in building and completing this road. This contract is still executory. The connection with the Duluth system of railroads is not yet completed, and it cannot be said with candor that the Land Company and its officers have no interest in the result of this contest. *Courtwright* v. *Strickler*, 37 Iowa, 386; *Diveny* v. *City of Elmira*, 51 N. Y. 506; *Bradbury* v. *Cony*, 62 Maine, 223.

An order to show cause is in law a motion, and can be made before a judge of an adjoining district, provided the hearing of said order shall not be at a greater distance from the county seat where the action is pending, than the residence of the judge of the district where such action is pending from such county seat. Judge *Mills'* residence is in Moorhead, Minnesota, nearly twice as far from the county seat where said action was pending as is Stillwater, where said order to show cause was heard. The last-named city was in an adjoining district, and from that view of the case Judge *Williston* very properly heard said order.

An *ex parte* order granting a preliminary injunction is not appealable. *Hoffman* v. *Mann*, 11 Minn. 364, (Gil. 262;) *Schurmeier* v. *First Div. St. P. & Pac. R. Co.*, 12 Minn. 351, (Gil. 228.)

Even if the order granting a preliminary injunction is appealable, such an appeal does not have the effect of authorizing the doing of the act or thing enjoined. *State* v. *Chase*, 41 Ind. 361; *Central Union Tel. Co.* v. *Board of Com'rs*, 110 Ind. 203; *Sixth Avenue R. Co.* v. *Gilbert Elevated R. Co.*, 71 N. Y. 430; *Heinlen* v. *Cross*, 63 Cal. 45; *Kentucky & Ind. Bridge Co.* v. *Kreiger*, 90 Ky. ——; *Smith* v. *Telegraph Co.*, 83 Ky. 269; *Green* v. *Griffin*, 95 N. C. 50; *Slaughter House Cases*, 10 Wall. 273; *Hovey* v. *McDonald*, 109 U. S. 150; *Leonard* v. *Ozark Land Co.*, 115 U. S. 465.

The provisions of our statute that "such an appeal when taken from the order shall stay all proceedings thereon and save all rights affected thereby," grant no new right, and is no permission to do the act prohibited by the writ of injunction.

Even though the Duluth Transfer Railway Company had the interest of the other co-tenants, it acquired no rights superior to said other co-tenants, and an injunction will issue to restrain injuries to the freehold in the nature of waste between co-tenants.   *Russell* v. *Merchants' Bank,* 47 Minn. 286; *Hennessy* v. *St. Paul, M. & M. Ry. Co.,* 30 Minn. 55; *Sherin* v. *Larson,* 28 Minn. 523.

1878 G. S. ch. 87, § 15, claimed by relators' counsel to be unconstitutional, is not involved in this controversy.

DICKINSON, J.   In proceedings at Stillwater, in Washington county, before the Hon. *W. C. Williston,* judge of the district court in and for the first judicial district, upon an order requiring the relators to show cause why they should not be punished for contempt of court, they were adjudged to be guilty of contempt, and fines were imposed therefor.   By writ of *certiorari* the proceedings have been brought to this court for review.   The proceedings to be reviewed, and the events connected with the acts of the relators, for which they were found guilty of contempt, may be thus stated :

An action was commenced in the district court in the county of St. Louis (eleventh judicial district) by one Myers and others, who may be hereafter referred to as the Myers brothers, against the Duluth Transfer Railway Company, the Calumet Construction Company, these relators, and others, to restrain these relators and others from proceeding with the construction of the railroad of said railway company across certain lands at or near the city of Duluth, of which the plaintiffs were the owners of an undivided one third.   It appears that the Calumet Construction Company had contracted to construct the railroad, and that subcontracts for construction had been let, pursuant to which the relators had undertaken and were performing the work sought to be restrained.   The defense was interposed that the right to construct the road across the plaintiffs' land had been acquired by condemnation proceedings.

Upon the *ex parte* application of the plaintiffs in that action, based on the complaint therein, a preliminary injunction was directed to be and was issued and served upon the relators.   This

order was made by the Honorable *Ira B. Mills,* the judge of the fourteenth judicial district, residing at Moorhead, in Clay county, but who was also exercising the duties of a judge of the eleventh district; from which the fourteenth had been carved out. Laws 1887, ch. 100; Laws 1889, ch. 151. Upon the service of the injunction upon the relators they appealed to this court from the order granting the same, and executed the *supersedeas* bond provided by statute to stay proceedings pending an appeal. They then went on with the work of constructing the railroad, in disobedience of the terms of the injunction. Thereupon, upon application of the plaintiffs to the Honorable *F. M. Crosby,* one of the judges of the first judicial district, an order was made directing the relators to show cause before Judge *Williston,* the other judge of that district, at Stillwater, therein, as before stated, why they should not be punished for such disobedience of the injunction. This proceeding seems to have been instituted and prosecuted before the judges of the first judicial district for the reason that it was claimed on the part of the plaintiffs that "Judges *Stearns* and *Ensign,* of the eleventh district, residing at Duluth, where the acts complained of were committed, were disqualified from acting by reason of having an interest in the matter to which the injunction related. Upon the return of the order to show cause before Judge *Williston* the relators appeared specially, objecting to the jurisdiction of the judges of the first district to proceed in the matter, presenting affidavits to show that Judges *Stearns* and *Ensign* were not thus interested, and that the proceedings might have been taken before them at Duluth.

The first judicial district adjoins the eleventh.

It is claimed on the part of the relators that the effect of the appeal from the order of Judge *Mills* granting the injunction, with the filing of the *supersedeas* bond, had the effect to suspend the operation of the order during the pendency of the appeal; the case of *State* v. *Duluth St. Ry. Co.,* 47 Minn. 369, (50 N. W. Rep. 332,) being cited in support of this proposition. Granting that such would be the effect of an appeal from an appealable order, that would not be the result of an appeal not authorized by law; and we hold that the order from which the appeal was taken was not appealable, but that

the relators should first have sought relief in the court below from the order granted *ex parte,* and without the benefit of such argument or disclosure as the adverse party might have made against the allowance or continuance of the injunction. That appeals will lie from such *ex parte* orders is opposed to the obvious reason upon which all purely appellate proceedings must be supposed to rest, namely, the necessity of an appeal to correct the error supposed to have been committed. The law attaches much importance to the hearing of both the interested parties, not only as a matter of right to them, but as an aid to courts in the determination of matters brought before them. It is ordinarily to be supposed that a court which may have acted inconsiderately or erroneously upon a one-sided application would perceive and correct its error if the adverse party were heard. An examination of many decisions in this court shows that the general language of the statute declaring the right of appeal has been construed in a limited sense where there has been no real consideration in the court below of the matter in question, with opportunity for the interested parties to be heard, and when it is to be presumed that upon hearing and consideration the court would correct any error which it may have committed.

Thus, while an appeal will lie from a judgment of the district court, and while the costs taxed by the clerk and entered in the judgment become a part of it, yet, for error in the judgment in respect to such costs, relief must in the first instance be sought in that court. *Jensen* v. *Crevier,* 33 Minn. 372, (23 N. W. Rep. 541;) *Coles* v. *Berryhill,* 37 Minn. 56, (33 N. W. Rep. 213;) *Stevens* v. *McMillin,* 37 Minn. 509, (35 N. W. Rep. 372.) So relief must first be sought in that court with respect to a judgment entered by the clerk erroneously or without authority of law. *Oldenberg* v. *Devine,* 40 Minn. 409, (42 N. W. Rep. 88;) *Lundberg* v. *Single Men's Endowment Ass'n,* 41 Minn. 508, (43 N. W. Rep. 394;) *Scott* v. *Minneapolis, St. P. & S. S. M. Ry. Co.,* 42 Minn. 179, (43 N. W. Rep. 966.) So, where judgment has been directed at the close of a trial without findings of fact, the court below should be appealed to to supply the defect. *Williams* v. *Schembri,* 44 Minn. 250, 253, 254, (46 N. W. Rep. 403.) So where findings of the court are obviously broader than was in-

tended, or are not sufficiently distinct, or do not cover the issues. *Smith* v. *Pendergast*, 26 Minn. 318; *Schulte* v. *First Nat. Bank*, 34 Minn. 48, (24 N. W. Rep. 320;) *Warner* v. *Foote*, 40 Minn. 176, (41 N. W. Rep. 935.) On appeal from a judgment the question whether the evidence justified the verdict will not be considered if there has been no application in the court below for its ruling upon that point. *Kelly* v. *Rogers*, 21 Minn. 146. Upon an order made *pro forma* and without consideration in the court below, the merits of the controversy will not be considered on appeal. *Johnson* v. *Howard*, 25 Minn. 558; and see *Colvill* v. *Langdon*, 22 Minn. 565, 569. Such illustrations might be still further extended.

In *Hoffman* v. *Mann*, 11 Minn. 364, (Gil. 262,) it was held, under the statute as it then stood, that an appeal would not lie from an *ex parte* order made by a judge at chambers; the order in that case being an order granting a preliminary injunction. This decision was followed in a similar case in *Schurmeier* v. *First Div. St. P. & P. R. Co.*, 12 Minn. 351, (Gil. 228.) It is true that those decisions were based upon a construction of the statute as allowing an appeal only from an order of the *court* as distinguished from an order made by the judge at chambers. Since the revision of the statute in 1866 there has been no room for such a distinction, but we believe that the bar has continued to regard the law as not authorizing appeals from mere *ex parte* orders in such cases. Excepting the case of *Gale* v. *Seifert*, 39 Minn. 171, (39 N. W. Rep. 69,)—an appeal from an order dissolving an attachment upon the giving of the statutory bond authorized as a substitute for an attachment,—we do not recall a case in which relief from an *ex parte* order of this kind has not been sought in the first instance in the court below, where that has been practicable. This practical construction of the statute for so many years, in accordance with the theory upon which so many decisions have been made, that appeals are allowed only when necessary for the correction of the error committed, affords a sufficient reason for the conclusion which we have expressed, that this order was not appealable. We need not consider whether the order in *Gale* v. *Seifert* was nonappealable, because made upon an *ex parte* application. That point was not presented to nor considered by the court in that case.

We come, then, to the question whether the judges of the first judicial district had jurisdiction to entertain this proceeding for contempt, and to adjudicate therein. The Constitution, art. 6, § 5, authorizes the legislature to provide by law that the judge of one district may discharge the duties of a judge of any other district, not his own, when convenience or the public interest may require it, and the legislature has so ordained, 1878 G. S. ch. 64, § 5. Section 3 provides that the courts in term time, and the judges thereof in vacation, have power to award throughout the state, returnable to the proper county, writs of injunction *ne exeat,* and all other writs or process necessary to the perfect exercise of the powers with which they are vested, and the due administration of justice. Section 5 has further declared that whenever a district judge is a party or otherwise interested in any cause, another district judge, in an adjoining district, shall, within his district, transact any *ex parte* business, hear and determine motions and grant orders in such causes, when brought before him, which acts shall have the same force as if done in the district in which such actions are pending. 1878 G. S. ch. 66, § 87, as amended by Laws 1881, ch. 7, provides that motions must be made in the district in which the action is pending, or in an adjoining district, provided that no motion shall be made in an adjoining district which shall require the hearing of such a motion at a greater distance from the county seat where the action is pending than the residence of the judge of the district wherein such action is pending from such county seat, with a qualification not necessary to be here noticed.

The acts adjudged to have constituted a contempt were committed in the county of St. Louis, in the eleventh district, and the venue of the action, in the course of which the injunction was issued, was in that county. Assuming that the statutes above referred to are applicable to this proceeding, it was not necessary that the same be prosecuted before Judge *Mills,* residing in the fourteenth district, further from the county seat of St. Louis county than is Stillwater, where this contempt matter was heard and decided. We are of the opinion that the statutes cited, considered in connection with the nature and constitution of our district court or "courts," as the court

of general jurisdiction in the state, divided into districts, for·conven-
ience, justify the institution and prosecution of such a proceeding
in a district adjoining that in which it should ordinarily be con-
ducted, if good reason therefor be shown; and disqualification of the
judge or judges of the latter district is a reason for proceeding in an
adjoining district.

Whether Judges *Stearns* and *Ensign* were so interested in the sub-
ject to which the injunction related as to have disqualified them from
acting was a matter of controversy upon affidavits submitted to the
decision of the district judge; and the rule always followed in this
court in reviewing decisions upon matters of fact is applicable here.
There was proof reasonably and so far supporting the claim that
those judges were interested that we should not overrule the deter-
mination of the district judge as to the fact.

It is said on the part of the relators that the injunction was void,
because the railroad company had acquired by condemnation against
the cotenants of the Myers brothers (the plaintiffs in the action) the
right to construct its road across these premises.    The proof upon
which the injunction was granted was to the effect that the premises
were adapted for residence purposes; that the threatened construc-
tion of the road across the same would involve an excavation of the
soil to the depth of from two to twenty-five feet, to a width of about
fifty feet, and for a distance of over 2,000 feet.    It is believed that
the cotenants of the Myers brothers would not have been justified, by
virtue of their cotenancy, in doing such acts destructive to the estate,
and so foreign to the ordinary use and enjoyment of such premises,
and that they would have been restrained by injunction from what
would be deemed waste.    *Russell* v. *Merchants' Bank*, 47 Minn. 286,
(50 N. W. Rep. 228;) 1 High, Inj. 692; *Hawley* v. *Clowes*, 2 Johns.
Ch. 122.    But, however this may be, there can be no doubt that
such condemnation proceedings, as against one or more of several
tenants in common, are ineffectual as against the other cotenants.
The constitutional right of the latter to the use and enjoyment of their
property cannot be thus divested or impaired.    Their property cannot
be thus taken without proper proceedings for that purpose, including
compensation to them.    This point might have been more briefly

disposed of by saying that the injunction was not void, and, so long as it stood, must be obeyed.

For the relators it is further contended that the law relating to contempt and punishment therefor, 1878 G. S. ch. 87, is unconstitutional, since by the Criminal Code such a contempt is declared to be a misdemeanor, and because § 15 of that chapter authorizes not only summary proceedings and punishment for contempt, as prescribed in that chapter, but also subjects the offender to indictment and further punishment. If it be conceded that to thus subject one to double punishment would violate the constitution, it will not avail the relators. That would be no reason why they should not be once punished. If section 15, declaring that the persons proceeded against should also be liable to indictment, were deemed unconstitutional, it would not follow that the rest of the law should fall. Indeed, it may be said that, if the whole of chapter 87 were swept away, there would remain unimpaired the inherent power of the court to punish for contempt. Whether, after one has been so punished, that would constitute a bar to a further prosecution, we need not consider.

The writ is discharged.

MITCHELL, J., (*concurring.*) While my own view is that an *ex parte* order granting an injunction is not appealable, yet I think the logic of the opinion by the court in *State* v. *Duluth St. Ry. Co.*, 47 Minn. 369, (50 N. W. Rep. 332,) would lead to the conclusion that it is appealable, and that such appeal, with a stay, will suspend the operation of the order. If the defendant against whom such *ex parte* order is obtained is put to his motion to dissolve, as held in this case, and if the plaintiff by an appeal, with a stay, can suspend the operation of the order dissolving the injunction, as held in the case cited, it is readily seen in how unequal and disadvantageous position the former is placed as compared with the latter.

(Opinion published 53 N. W. Rep. 1157.)