## STATE v. J. P. SINNA AND SONS, INC.
## INDUSTRIAL CREDIT COMPANY, APPELLANT.

136 N. W. (2d) 666.

June 25, 1965—No. 39,561.

*Jerome B. Simon, James W. Brehl,* and *Maun, Hazel, Green, Hayes, Simon & Aretz,* for appellant.

*Robert W. Mattson,* Attorney General, *William B. Randall,* County Attorney, and *Christos B. Sater,* Assistant County Attorney, for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal by Industrial Credit Company, a corporation, from an order denying its motion to vacate an ex parte order in supplementary proceedings issued by the District Court of Ramsey County May 21, 1964, pursuant to Minn. St. 575.07.[1]

The ex parte order required that Industrial Credit Company appear before the court with all of its records pertaining to a transaction with J. P. Sinna and Sons, Inc., including a chattel mortgage dated September 16, 1960, wherein J. P. Sinna and Sons, Inc., pledged certain

---

[1] Minn. St. 575.07 provides: "After the issuing or return of an execution against property of the judgment debtor, or of any one of several debtors in the same judgment, upon proof, by affidavit or otherwise, to the satisfaction of the judge, that any person has property of the judgment debtor, or is indebted to him in an amount exceeding $10, the judge may require such person, or any officer thereof if a corporation, upon such notice to any party as may seem proper, to appear and answer concerning the same."

personal property to Industrial Credit Company as security for a loan; and to give testimony with respect to such transaction.

The record discloses that the personal property pledged under the chattel mortgage consists of various tractors, graders, scrapers, and other road-building equipment, upon which Ramsey County had levied and assessed personal property taxes as of May 1, 1962. As a basis for the ex parte order challenged, the court relied upon an affidavit of Christos B. Sater, an assistant county attorney for Ramsey County. Therein he averred that on May 1, 1962, the county, pursuant to § 273.01,[2] had assessed and levied personal property taxes in the sum of $1,881.40 on the personal property covered by the chattel mortgage to Industrial Credit Company; that such taxes had become delinquent on March 1, 1963; that judgment therefor against J. P. Sinna and Sons, Inc., in the sum of $2,096.87 had been entered in the District Court of Ramsey County January 13, 1964; and that execution thereon had been returned unsatisfied by the sheriff of Ramsey County on March 25, 1964. He further averred that on October 11, 1962, (subsequent to the date upon which the county's tax lien upon the personal property became effective pursuant to § 272.50)[3] Industrial Credit Company had taken possession of all of such personal property after which the attempt of the county to locate it had been unsuccessful.

On appeal, Industrial Credit Company contends that the ex parte order requiring it to appear and testify was not authorized under

[2]Minn. St. 273.01 provides in part: "Personal property subject to taxation shall be listed and assessed annually with reference to its value on May first; and, if acquired on that day, shall be listed by or for the person acquiring it."

[3]Minn. St. 272.50 provides in part: "The taxes assessed upon personal property, with lawful penalties, interest, and costs, shall be a first and perpetual lien, superior and paramount to all other liens or encumbrances thereon, except the vendor's interest in conditional sales contracts, whether prior or subsequent in point of time, upon all of the personal property then owned by the person assessed from and including May first in the year in which they are levied, until they are paid; provided, such lien shall not continue on items of personal property sold at wholesale or retail in the ordinary course of business."

§ 575.07, in that there was no proof or averment in the affidavit of the assistant county attorney, that it had possession of any property of the judgment debtor, or that it was indebted to him in an amount exceeding $10.

■ We are convinced that the order denying appellant's motion to vacate the ex parte order which required it to appear in supplementary proceedings is not appealable because the ex parte order itself was not so. In Rondeau v. Beaumette, 4 Minn. 163 (224 at 227), it was stated:

"The right to appeal from an order of the district court is found in * * * Comp. Stat. ch. 71, § 11, the sixth subdivision of which is as follows: 'From a final order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment.' * * *

"The first order granted by the judge to call the parties before him, was, in its nature, only initial, or preliminary, to set the proceedings in motion; and the second, which ordered a reference, was simply interlocutory, or mesne, to supply facts necessarily precedent to the making of any final determination or order in the matter. They were neither of them appealable orders."

Again, in West Publishing Co. v. De La Mott, 104 Minn. 174, 116 N. W. 103, it was held that an ex parte order in supplementary proceedings directing defendant to appear for examination was not appealable, citing Rondeau v. Beaumette, *supra,* in support of this position. There the court stated (104 Minn. 175, 116 N. W. 103):

"The order here in question is not appealable. It was so held in Rondeau v. Beaumette, 4 Minn. 163 (224), on the ground that such an order was a preliminary and interlocutory one. The defendant, however, urges that the provision of R. L. 1905, § 4365, subd. 6, giving an appeal 'from an order or judgment made or rendered in proceedings supplementary to execution,' changes the rule. * * * [T]his must be construed in harmony with the settled construction of statutes giving the right of appeal from an order, in general language. Such statutes cannot be construed as giving the right of appeal from every order made in a case or proceeding."

Rondeau v. Beaumette, *supra*, has been cited with approval in In re Trust Created by Will of Enger, 225 Minn. 229, 30 N. W. (2d) 694, 1 A. L. R. (2d) 1048; Ives v. Phelps, 16 Minn. 407 (451); and Gove v. County of Murray, 147 Minn. 24, 179 N. W. 569. Likewise, § 605.09[4] specifically prescribes finality as a prerequisite for appeal from orders in proceedings supplementary to judgment. For decisions defining finality in orders, see 1 Dunnell, Dig. (3 ed.) §§ 296a to 309.

■ It is true that this court has held that while an appeal does not lie from an ex parte order because of its lack of finality, nevertheless its validity may be tested in an appeal from an order denying a motion to vacate it. West Publishing Co. v. De La Mott, *supra*; Sundberg v. Goar, 92 Minn. 143, 99 N. W. 638; State ex rel. Norris v. District Court, 52 Minn. 283, 53 N. W. 1157. However, since Chapman v. Dorsey, 230 Minn. 279, 41 N. W. (2d) 438, 16 A. L. R. (2d) 1015, this rule can no longer be held applicable to an ex parte order which is nonappealable for reasons *other* than its ex parte nature. As there stated (230 Minn. 287, 41 N. W. [2d] 443):

"* * * *Obviously, ex parte orders may be nonappealable for other reasons aside from that of their ex parte birth.* In Sundberg v. Goar, 92 Minn. 143, 99 N. W. 638, apparently the attention of the court was not directed to the fact that every ex parte order, *without regard to its possible nonappealability on other grounds,* is not necessarily converted into an appealable order by the mere de-

---

[4]Minn. St. 605.09 provides in part: "An appeal may be taken to the supreme court:

\* \* \* \* \*

"(e) From an order which, in effect, determines the action, and prevents a judgment from which an appeal might be taken;

"(f) From a final order or judgment made or rendered in proceedings supplementary to execution;

"(g) Except as otherwise provided by statute, from the final order or judgment affecting a substantial right made in a special proceeding, provided that the appeal must be taken within the time limited for appeal from an order."

vice of introducing adversary proceedings. As a general rule, *a motion to vacate a nonappealable order can only cure an appealability defect which arises from an ex parte birth and not those which are otherwise inherent therein.*"

■ Although the present ex parte order is nonappealable, past decisions of this court manifest that an appeal would lie from an order adjudging appellant in contempt of court and sentencing its officers for refusal to comply with terms of the ex parte order. Paulson v. Johnson, 214 Minn. 202, 7 N. W. (2d) 338; Child v. Washed Sand & Gravel Co. 181 Minn. 561, 233 N. W. 586; Menage v. Lustfield, 30 Minn. 487, 16 N. W. 398. Accordingly, to avoid multiplicity we will discuss the contention that the affidavit upon which the ex parte order here was based was inadequate for its support under § 575.07.

■ First it must be noted that the trial court's examination of the affidavit and the undisputed facts satisfied it that the requirements of § 575.07 had been met. This section requires merely that to support an order under § 575.07 the affidavit prove to the *satisfaction of the trial judge* (and not this court) that the third party have "property of the judgment debtor at the time" or be indebted to him in excess of $10. It seems clear under this provision that only where there has been an extreme disregard for this requirement should this court substitute its ideas as to what constitutes such satisfaction for those of the trial judge in this respect.

Here the affidavit makes it clear that on May 1, 1962, the county's personal property tax lien upon certain described personal property of J. P. Sinna and Sons, Inc., became effective pursuant to § 272.50. On that date, it is averred, J. P. Sinna and Sons, Inc., which subsequently became judgment debtor for such taxes, was the owner of the personal property which theretofore had been pledged under a chattel mortgage to Industrial Credit Company. From and after May 1, 1962, this mortgage was subordinate to the county's rights in the personal property under the tax lien described. (See, § 272.50.) No vendors' liens or interests are involved, and under § 272.50 the

fact that the chattel mortgage was filed prior to May 1, 1962, did not give it priority over the tax lien.

Accordingly, when Industrial Credit Company took possession of the property pledged under its chattel mortgage, whether for the purpose of foreclosure or otherwise, it did not divest the county of its lien right therein. For the security of this lien at least, J. P. Sinna and Sons, Inc., continued to be the owner of the property taken. The affidavit which averred that Industrial Credit Company had taken possession of it was uncontroverted and gave rise to a presumption that possession continued in this company at least until the contrary were shown. Ware v. Squyer, 81 Minn. 388, 84 N. W. 126; 7 Dunnell, Dig. (3 ed.) § 3438.

Further, should evidence received in the supplementary proceedings reveal either that the mortgage had been paid prior to foreclosure; that it was invalid for lack of consideration or for other reasons; that its foreclosure had not been consummated; or that its foreclosure was defective because of failure to comply with statutory requirements or for other reasons, then under any of these circumstances the judgment debtor would still have an interest in the property subject to attachment or levy by the county. And if such evidence disclosed an effective foreclosure sale under which Industrial Credit Company bid in the personal property for the amount of its mortgage, thereby acquiring both its title and the right to its possession, the county could still levy upon it under the tax judgment and lien which remained in effect thereon. Berg v. Olson, 88 Minn. 392, 93 N. W. 309; Deal v. D. M. Osborne & Co. 42 Minn. 102, 43 N. W. 835; First Nat. Bank v. Flynn, 190 Minn. 102, 250 N. W. 806, 92 A. L. R. 1272; see, Thoen v. First Nat. Bank, 199 Minn. 47, 271 N. W. 111.

Likewise, under an effective foreclosure sale wherein the property was sold to others and the proceeds of such sale delivered to Industrial Credit Company, the proceeds would be subject to the tax lien and judgment described, and execution thereunder to the full extent of the judgment. Thus, in State v. Central Trust Co. (8 Cir.) 94 F. 244, (decided prior to § 272.50) where a chattel mortgage

had been foreclosed upon personal property upon which the state had a lien for taxes and the state contended that its tax lien should be paid out of the proceeds of the foreclosure sale, the court, in supporting this claim, stated (94 F. 248):

"* * * The sole question at issue, then, is whether the lien of the state should be regarded as inferior to that of the mortgagee because the legislature did not expressly declare that it should be paramount. * * * [W]hile it is doubtless true that in some cases personal property owned by the taxpayer when he is assessed for taxation is not identical with that which he owns when the lien attaches, yet we can perceive no reason why this fact should have any effect upon the paramount character of the lien imposed for personal taxes. * * *

"* * * [A] construction of the statute which will make a tax lien subordinate to a private lien will afford a ready means of enabling those who are so disposed to avoid the payment of personal taxes altogether * * *. No state * * * has ever made provision for redeeming property on which it imposes taxes from prior liens in favor of individuals, in order to secure its own revenue therefrom; nor is it either expedient or desirable that laws of that nature should be enacted, and that the state, like an individual, should be compelled to indulge in a race of diligence to secure its taxes. * * *

"* * * [W]e conclude that the inference should be that the lien was intended by the legislature to be superior to all liens, prior or subsequent, claimed by individuals, and that nothing should be allowed to overcome this inference but a plain expression of a different purpose found in the statute itself. * * * It is accordingly ordered * * * that the case be remanded * * * with directions * * * to enter an order directing the payment, out of the proceeds of the foreclosure sale, of the taxes imposed in favor of the state of Minnesota * * *."

See, also, Land O' Lakes Dairy Co. v. County of Wadena, 229 Minn. 263, 39 N. W. (2d) 164; Morey v. City of Duluth, 75 Minn. 221, 77 N. W. 829; Opinions Attorney General, No. 421a-8, Septem-

ber 15, 1961, July 29, 1948, May 11, 1949, April 30, 1943, October 20, 1939.

Based upon the language of § 575.07, and the principles above set forth, we conclude that the affidavit upon which the order in supplementary proceedings was based was adequate to establish "to the satisfaction of the judge" that as of its date Industrial Credit Company had property of defendant in its possession.[5]

Affirmed.

---

[5]The general requirements of an affidavit in supplementary proceedings under statutes similar to § 575.07 are set forth in 21 Am. Jur., Executions, § 666, as follows: "Generally, the affidavit is required to state the names of the parties to the judgment, the court in which it was rendered, the court or officer with whom the judgment roll was filed, and the date of the rendition of the judgment. It should state not only the amount of the judgment, but the amount then due thereon. Another fact generally required to be stated in the affidavit is that a writ of execution was issued to the proper county and that it was returned wholly or partially unsatisfied. Authority also exists in favor of the rule that the affidavit should state that the debtor has property which he unjustly refuses to apply toward the satisfaction of the judgment, in spite of a demand therefor, although it is not required to specify such property, for it is generally the purpose of proceedings to compel a discovery of just such property and to ascertain the true and specific interest of the debtor therein." Annotation, 100 Am. D. 505; Magruder v. Shelton, 98 N. C. 545, 4 S. E. 141.