JOHN CASPER v. REGIONAL AGRICULTURAL CREDIT CORPORATION OF MINNEAPOLIS.[1]

April 8, 1938.

No. 31,561.

[1]Reported in 278 N. W. 896.

434

*L. P. Johnson,* for appellant.

*Einar Hoidale, C. W. Lawrence, Jr., John P. Devaney, Harry E. Ryan,* and *Thomas F. Clifford,* for respondent.

PETERSON, JUSTICE.

On April 12, 1933, plaintiff obtained from defendant a so-called "barnyard loan" in the sum of $3,000, due one year after date, secured by a chattel mortgage covering certain livestock, feed, roughage, farm machinery, and equipment. The mortgage contained a provision that the property was to remain in the mortgagor's possession, but that if the mortgagee should at any time deem the debt insecure or fear diminution or waste of the mortgaged property it might declare the whole debt due and payable at once and take immediate possession of the property with right of entry on the mortgagor's premises for that purpose. Defendant declared the debt due under the insecurity clause, to which further reference will be made later, and caused the property to be sold on August 12, 1933, by the sheriff at chattel mortgage foreclosure sale. Plaintiff sued in conversion to recover $10,750, alleged to be the reasonable value of the mortgaged property. His contention was that the foreclosure was wrongful for the reason that defendant did not in good faith deem itself insecure. Plaintiff recovered a verdict of $6,559.65. On defendant's motion in the alternative for judgment notwithstanding or for a new trial, the court below granted the motion for judgment notwithstanding the verdict exclusively on the ground that it appeared as a matter of law that defendant in good faith deemed itself insecure because plaintiff had abandoned the mort-

gaged property. A further statement of facts will be made in connection with particular issues to be discussed.

■ The defense, not urged at the trial and presented for the first time on the argument of the alternative motion, that the court did not have jurisdiction of defendant or the subject matter of the action because defendant is immune from suit as an instrumentality of the United States, will be noticed despite its tardiness. Suits against the United States can be maintained only by permission granted by act of congress, and no official has the power to waive immunity by appearance on behalf of the government. Munro v. United States, 303 U. S. 36, 58 S. Ct. 421, 82 L. ed. —; Minnesota v. Hitchcock, 185 U. S. 373, 385, 22 S. Ct. 650, 46 L. ed. 954. If the point is well taken defendant is entitled to judgment. C. M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 167 N. W. 124.

■ Defendant was "created" by the Reconstruction Finance Corporation pursuant to § 605b(e)[2] of the act under which the Recon-

---

2"§ 605b(e).  **Creation of regional agricultural credit corporation; loans to farmers and stockmen.**  The Reconstruction Finance Corporation is further authorized to create in any of the twelve Federal land-bank districts where it may deem the same to be desirable a regional agricultural credit corporation with a paid-up capital of not less than $3,000,000, to be subscribed for by the Reconstruction Finance Corporation and paid for out of the unexpended balance of the amounts allocated and made available to the Secretary of Agriculture under section 602 of this title. Such corporations shall be managed by officers and agents to be appointed by the Reconstruction Finance Corporation under such rules and regulations as its board of directors may prescribe. Such corporations are hereby authorized and empowered to make loans or advances to farmers and stockmen, the proceeds of which are to be used for an agricultural purpose (including crop production), or for the raising, breeding, fattening, or marketing of livestock, to charge such rates of interest or discount thereon as in their judgment are fair and equitable, subject to the approval of the Reconstruction Finance Corporation, and to rediscount with the Reconstruction Finance Corporation and the various Federal reserve banks and Federal intermediate credit banks any paper that they acquire which is eligible for such purpose. All expenses incurred in connection with the operation of such corporations shall be supervised and paid by the Reconstruction Finance Corporation under such rules and regulations as its board of directors may prescribe."

struction Finance Corporation was organized. 15 USCA, §§ 601-617.

Generally, the purposes of the Reconstruction Finance Corporation are declared to be to provide emergency financial facilities to financial corporations, to aid in financing agriculture, commerce and industry, and other similar purposes. The act provides that the management of the corporation shall be vested in a board of directors consisting of the secretary of the treasury *ex officio* and six other members; that it shall have a capital stock of $500,000,000, subscribed by the United States, and its duration shall be for a period of ten years from the date of its enactment unless sooner dissolved by act of congress. The scheme and purpose of the act was to provide financial aid in the respects mentioned during the period of the depression.

The Reconstruction Finance Corporation is authorized to "create" a regional agricultural credit corporation in each of the 12 Federal Land Bank districts, with a paid-up capital of not less than $3,000,000, to be subscribed by the Reconstruction Finance Corporation and paid out of the unexpended balance of amounts allocated and made available to the secretary of agriculture. The act provided that the officers and agents shall be appointed by the Reconstruction Finance Corporation. This function was later transferred to the Governor of the Farm Credit Administration, pursuant to Executive Order No. 6084, dated March 27, 1933, effective on May 27, 1933. The same order transferred to the Governor of the Farm Credit Administration control of the funds allocated by the act to the secretary of agriculture.

The act in express terms declares that the Reconstruction Finance Corporation shall have capital stock, corporate organization, may sue and be sued, limited duration, and numerous powers and purposes. It provides that a regional agricultural credit corporation shall have capital (not capital stock), corporate organization, and power to make loans and advances for agricultural and livestock purposes as therein stated, and to rediscount its paper. It does not in express terms declare that defendant may sue or be sued nor does it limit its duration.

The contention is that the United States cannot be sued without its consent and that its immunity as a sovereign extends to defendant as an instrumentality of the federal government. Defendant cites and relies on Keifer & Keifer v. Reconstruction Finance Corp. 22 F. Supp. 918, holding that a regional agricultural credit corporation may not be sued without the consent of congress and that congress has not given such consent. With utmost deference to the court which decided that case, we refuse to follow it because we think congressional consent to suit has been given.

Of course it is fundamental that the United States cannot be sued without its permission. *The Western Maid,* 257 U. S. 419, 42 S. Ct. 159, 66 L. ed. 299; North Dakota-Montana W. G. Assn. v. United States (C. C. A.) 66 F. (2d) 573, 92 A. L. R. 1484. This action is not against the United States as such, and it may be brought against defendant unless it stands in the sovereign immunity of the United States. Congress has full power to determine to what extent instrumentalities of the federal government partake of its sovereign character and immunity from suit. Whether federal agencies are subject to suit and to what extent is a question of congressional intent. Federal Land Bank v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 706, 79 L. ed. 1408. The general rule is that the sovereign immunity of the United States does not extend to its agents, individual or corporate. Sloan Shipyards Corp. v. U. S. Ship. B. E. Fleet Corp. 258 U. S. 549, 42 S. Ct. 386, 388, 66 L. ed. 762; United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 27 L. ed. 171; Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 40 L. ed. 599; 26 R. C. L. 1459, § 63, note 15; note, 15 Ann. Cas. 1109. No rule has been laid down by the Supreme Court of the United States by which the congressional intent may be determined in a particular case. Provision in a corporate charter that the corporation shall have power to sue and be sued is held to be an express waiver of immunity from suit. Federal Land Bank v. Priddy, *supra.* The rule has been applied in many cases. In Sloan Shipyards Corp. v. U. S. Ship. B. E. Fleet Corp. *supra,* the plaintiff sued the United States Fleet Corporation to set aside a contract which the parties entered into to take the place of a former contract and for an

accounting on the basis of the provisions of the original contract. Plaintiff alleged that defendant failed to make payments under the original contract, unlawfully took possession of plaintiff's property, retained it, and had done a series of acts causing plaintiff great loss. Defendant claimed immunity from suit upon the ground that it was a governmental agency, a corporation organized by the United States Shipping Board under the general laws of the District of Columbia pursuant to authority by a statute of the United States, for the purpose of purchasing, contracting, and operating merchant vessels in connection with the World War. It was formed in contemplation of the war and was to be dissolved five years after its conclusion. The capital stock was $50,000,000, of which the shipping board was to acquire not less than the majority. It was conceded that the defendant was an instrumentality of the United States and that its purposes were governmental. In denying to defendant the claim of sovereign immunity, the court pointed out that such a claim is a very dangerous departure from one of the first principles of our law, that, while the sovereign itself is immune from suit, every other person within the jurisdiction is always amenable to suit. This is true even though the person be an agent of the government. It was said that if the defendant were an individual instead of a corporation it would be doubtful if anyone would make the claim of immunity. Mr. Justice Holmes speaking for the court said [258 U. S. 567]:

"An instrumentality of government he might be and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts. * * * If what we have said is correct it cannot matter that the agent is a corporation rather than a single man. The meaning of incorporation is that you have a person, and as a person one that presumably is subject to the general rules of law. * * * In general the United States cannot be sued for a tort, but its immunity does not extend to those that acted in its name."

Congressional intent that there should be no immunity from suit was held to have been indicated by creation of a corporation author-

ized to contract and stand suit in its own name, and that such intent is not negatived by financial support of the corporation by the United States.

In United States ex rel. Skinner & Eddy Corp. v. McCarl, 275 U. S. 1, 48 S. Ct. 12, 72 L. ed. 131, it was pointed out that such corporations are created for convenience, it being supposed that the corporate form enables them to employ commercial methods and to conduct their operations with a freedom inconsistent with accountability to the treasury under its established procedure of audit and control over financial transactions of the United States. To the extent that such convenience is served, the corporate entity is recognized. It is recognized for all purposes relating to the transaction of ordinary corporate business and affairs. Such corporations have been held liable both in tort and on contract. Cohn v. U. S. Shipping Board (C. C. A.) 20 F. (2d) 56. Without attempting to review the authorities, a few illustrations may be cited. In Sloan Shipyards v. U. S. Fleet Corp. and Cohn v. U. S. Shipping Board, *supra,* the rule was applied to the fleet corporation. In National Home for Disabled Volunteer Soldiers v. Parrish, 229 U. S. 494, 33 S. Ct. 944, 57 L. ed. 1296, it was applied to an eleemosynary nonstock corporation maintained by the federal government as a home for soldiers. In Federal S. R. Co. v. United States S. E. Board (D. C.) 268 F. 575, the defendant, a Delaware corporation organized for governmental purposes, was held liable in tort and on contract notwithstanding that the acts complained of were done by order of the President. The federal land banks are held subject to suit, Federal Land Bank v. Priddy, *supra;* and the Home Owners' Loan Corporation has been held subject to process of attachment and garnishment. Gill v. Reese, 53 Ohio App. 134, 4 N. E. (2d) 273; Central Market, Inc. v. King, 132 Neb. 380, 272 N. W. 244; Pennell v. Home Owners' Loan Corp. 21 F. Supp. 497. The Panama Railway, although a government instrumentality (New York ex rel. Rogers v. Graves, 299 U. S. 401, 57 S. Ct. 269, 81 L. ed. 306), has been held liable for negligence, Panama R. Co. v. Curran (C. C. A.) 256 F. 768; Panama R. Co. v. Minnix (C. C. A.) 282 F. 47. See

Salas v. United States (C. C. A.) 234 F. 842. Many other instances might be cited.

The rule withholding immunity from governmental agencies in cases of contract and tort is in harmony with the general congressional policy with respect to such matters. Not only has the government withheld such immunity from corporations which it has created but it has in large measure waived its own immunity by consenting to suit, except in tort, under the Tucker Act, 28 USCA, § 41 (20), and in the court of claims.

We do not regard the failure expressly to state that defendant shall have power to sue and be sued as withholding that power. In the Priddy case [295 U. S. 232] it was stated that if the congressional intent is not expressly stated it may be ascertained "by examination of the purposes and organization" of the corporation. Such examination discloses an intent that defendant shall be subject to suit. Although it is customary to state the incidental powers of a corporation, it is not necessary to do so. A grant of corporate existence is itself a grant of power to sue and be sued. Those incidents, unless expressly withheld, exist without specific enumeration. 3 Thompson, Corporations (3 ed.) § 2180, p. 821; 1 Cook, Corporations (8 ed.) § 3, p. 16; 2 Kent's Commentaries (13 ed.) 369; 1 Chitty's Blackstone, 395, where it is stated that the incidents of a corporation, including the power to sue and be sued, implead and be impleaded, "are *necessarily and inseparably* incident to every corporation * * * as soon as a corporation is duly erected * * *"; 6 Viner's Abr. 265(G): "When a corporation is duly created, all other incidents are tacitly annexed. * * * As if the king makes a general corporation * * * without any words of license * * * yet the corporation may purchase, plead, or be impleaded well enough; for that by the making of the corporation all those necessary incidents are included."; 8 Halsbury's Laws of England (Hailsham ed.) pp. 67-68; 7 R. C. L. p. 689, § 690; Hancock v. Louisville & Nashville R. Co. 145 U. S. 409, 12 S. Ct. 969, 36 L. ed. 755; McLoud v. Selby, 10 Conn. 389, 27 Am. D. 689; DeHaas v. Penn. R. Co. 261 Pa. 499, 104 A. 733; Case of Sutton's Hospital, 5 Coke, Part X, p. 285. This was the settled rule prior

to the decision in the case of Sutton's Hospital in 1612, *supra,* in which the court said that the power to sue and be sued is one of the incidents of a corporation and that when a corporation is duly created the [5 Coke, 299] "incidents are *tacite* annexed," including the power to sue and be sued, implead and be impleaded. The expression used in Sutton's Case, that a corporation may sue and be sued, implead and be impleaded, is still the language of the books. The power of defendant to sue and be sued is implied from the very fact that it is a corporation, the same as though the power had been expressly stated and granted. Such power is a part of defendant's very corporate existence.

The rule of nonimmunity has been applied without respect to the law under which the corporation was organized. In Federal Land Bank v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 79 L. ed. 1408, and National Home for Disabled Volunteer Soldiers v. Parrish, 229 U. S. 494, 33 S. Ct. 944, 57 L. ed. 1296, the corporations were organized under federal statutes; in Sloan Shipyards Corp. v. U. S. Ship. B. E. Fleet Corp. 258 U. S. 549, 42 S. Ct. 386, 66 L. ed. 762, and Gould Coupler Co. v. U. S. Shipping Board E. F. Corp. (D. C.) 261 F. 716, the corporations were organized under the laws of the District of Columbia; in U. S. Grain Corp. v. Phillips, 261 U. S. 106, 43 S. Ct. 283, 67 L. ed. 552, the grain corporation was organized under the laws of the state of Delaware; in Clallam County v. United States, 263 U. S. 341, 44 S. Ct. 121, 68 L. ed. 328, the Spruce Corporation was organized under the laws of the state of Washington; in Panama R. Co. v. Curran (C. C. A.) 256 F. 768, and Panama R. Co. v. Minnix (C. C. A.) 282 F. 47, the Panama Railroad was organized under the laws of the state of New York.

We do not regard certain decisions holding that governmental corporations are exempt from state taxation as being opposed to the views which we have stated. They only illustrate that sovereign immunity has been accorded to the same corporation for some purposes and denied for others. The congressional policy has been to declare its consent to state taxation of federal instrumentalities, for example, R. S. § 5219, consenting to state taxation of national banks. In some instances exemption of federal instrumentalities

from state taxation has been expressly declared. Federal Land Bank v. Priddy, 295 U. S. 229, 234, 55 S. Ct. 705, 707, 79 L. ed. 1408; Smith v. Kansas City T. & T. Co. 255 U. S. 180, 41 S. Ct. 243, 65 L. ed. 577. In the absence of an express declaration, immunity from state taxation will be inferred more readily than immunity from suit. Federal Land Bank v. Priddy, *supra*. An inference of immunity from state taxation of federal instrumentalities accords with the settled policy of both the federal and state governments not to permit the taxation of their respective instrumentalities by the other. Ever since M'Culloch v. Maryland, 4 Wheat. 316, 4 L. ed. 579, the Supreme Court has regarded the power to tax as involving the power to destroy. Macallen Co. v. Massachusetts, 279 U. S. 620, 628, 49 S. Ct. 432, 434, 73 L. ed. 874, 65 A. L. R. 866. In cases involving state taxation of instrumentalities of the federal government, the courts have looked through the corporate form to see that the real incidence of the tax was upon property of which the United States was the beneficial owner. Clallam County v. United States, 263 U. S. 341, 44 S. Ct. 121, 68 L. ed. 328; U. S. Spruce Prod. Corp. v. Lincoln County (D. C.) 285 F. 388 (U. S. Spruce Corporation); United States v. Coughlan (D. C.) 261 F. 425; King County v. U. S. Ship. Board E. F. Corp. (C. C. A.) 282 F. 950 (U. S. Fleet Corporation). See 8 Minn. L. Rev. 427; 27 Mich. L. Rev. 786, 788. It will be noted that the corporations named in these cases have been held suable in tort and on contract. See cases cited *supra*. The distinction between immunity from taxation and immunity from suit appears to be founded upon reasons which suggest themselves. State taxation is entirely within the control of state authorities. Contract and other liabilities for which suits may be brought against corporate instrumentalities of the federal government are within its control.

In certain cases the government has been regarded as the real party in interest and the corporate entity disregarded. Emergency Fleet Corp. v. Western Union Tel. Co. 275 U. S. 415, 48 S. Ct. 198, 72 L. ed. 345 (to secure to the government through the fleet corporation governmental rates for telegrams); U. S. Grain Corp. v. Phillips, 261 U. S. 106, 43 S. Ct. 283, 67 L. ed. 552 (to secure

transportation of gold upon the same terms as property of the United States, the legal title of which was in the grain corporation but which the government beneficially owned, it appearing that the grain corporation was only an agent and the government the beneficial owner of the gold transported). The corporate identity of the Panama Railroad was ignored in holding that salary paid to its officers was exempt from state taxation. New York ex rel. Rogers v. Graves, 299 U. S. 401, 57 S. Ct. 269, 81 L. ed. 306. In U. S. Grain Corp. v. Phillips, 261 U. S. 106, 43 S. Ct. 283, 286, 67 L. ed. 552, the court indicated adherence to the decision in the Sloan Shipyards case in the following language [261 U. S. 113]:

"It is true that the legal title was in the Corporation, that the property of the Corporation might have been taken to pay a judgment against it, and that in other ways the difference of personality would be recognized. Sloan Shipyards Corporation v. United States Shipping Board Emergency Fleet Corporation, 258 U. S. 549," 42 S. Ct. 386, 66 L. ed. 762.

This decision and others of like import are regarded as not overruling the principles announced in the Sloan Shipyards case. Providence Engineering Corp. v. Downey Shipbuilding Corp. (C. C. A.) 294 F. 641.

The inference that defendant is subject to suit is supported by the fact that its creator, the Reconstruction Finance Corporation, is itself subject to suit. The theory on which immunity is sustained is that the creator has transmitted to the creature its sovereign immunity. The government withheld such immunity from the Reconstruction Finance Corporation. It thus indicated a general policy of subjecting the Reconstruction Finance Corporation and its property to suit and judicial process. True, defendant derives its powers from the statute, but it is hardly to be inferred that immunity would be granted to the creature where it is withheld from the creator. The fact that defendant was created a corporation with all incidents of a corporation would seem to be decisive in the light of other considerations.

■ ■ Mason Minn. St. 1927, § 8352, provides: "No mortgagee * * * shall arbitrarily, or without just and sufficient cause, declare any condition or stipulation of a mortgage broken prior to a default in the performance thereof; * * *" A mortgagee may avail himself of the insecurity clause only when facts exist which constitute a reasonable ground for believing that the security is in danger. Nash v. Larson, 80 Minn. 458, 83 N. W. 451, 81 A. S. R. 272; Galde v. Forsyth, 72 Minn. 248, 75 N. W. 219; Deal v. D. M. Osborne & Co. 42 Minn. 102, 43 N. W. 835. An action in conversion will lie against the mortgagee who before default and without right under the insecurity clause takes the mortgaged property and sells the same in attempted foreclosure proceedings. Southwick v. Himmelman, 109 Minn. 76, 122 N. W. 1016. Disputed facts must of course be resolved by the jury, and so must it pass upon the effect of those facts as constituting a reasonable ground for believing the security in danger. Nash v. Larson, *supra.*

Whether or not facts existed which justified defendant in reasonably believing its security in jeopardy was a question for the jury. It does not appear as a matter of law that plaintiff abandoned any of the mortgaged chattels. Plaintiff testified that when the sheriff came with a writ of restitution to move him from the farm after expiration of the period for redemption, he told the sheriff he would take the property to a near-by farm and care for it there. According to plaintiff's testimony, which is contradicted but not impeached, the sheriff refused to let him move the mortgaged property. It is apparent from the record that plaintiff used all means at hand to keep possession of the farm and the mortgaged chattels. He obtained an order from the district court in July, 1933, restraining the sheriff from acting on the writ of restitution, and thereby remained on the farm with the property until about July 20, 1933, when the restraining order was vacated and the sheriff served the writ of restitution. After that date the sheriff continued in his refusal to allow plaintiff to remove the chattels; ordered him in fact, by the sheriff's own testimony, to stay off the premises. During August, 1933, plaintiff returned to the farm on at least two occasions to count the cattle. Plaintiff refused to release the certificates

of pedigree covering the cattle. On the day of the auction plaintiff and his wife were present, and plaintiff again announced his ownership of the chattels and insisted upon his right to redeem after sale. From these facts the jury could find that plaintiff's act in leaving the property with the sheriff followed from the sheriff's refusal to let him remove it, and the acts of plaintiff at the time the sheriff took possession under the writ of restitution and thereafter until the auction justify a finding that plaintiff did not intend to abandon his property. Rowe v. City of Minneapolis, 49 Minn. 148, 51 N. W. 907; Shepard v. Alden, 161 Minn. 135, 201 N. W. 537, 202 N. W. 71, 39 A. L. R. 1094.

Defendant argues that because it is undisputed that plaintiff falsely represented in his application for the loan that the mortgage on his farm was not undergoing foreclosure, as a matter of law defendant was justified in deeming the security in danger. But it appears from defendant's own conduct that it did not consider plaintiff's loss of the farm as necessarily putting the security in jeopardy. When defendant learned that plaintiff was losing the farm it inquired of plaintiff what arrangements he could make to care for the livestock, but it did not then proceed to foreclose the chattel mortgage. It was not until the sheriff had taken possession and was holding the property that defendant took action. Then a notice was served upon plaintiff, instructing him to remove the chattels from the farm and satisfy a lien claimed by the real estate mortgagee Johnston for expenses in caring for the property, and advising plaintiff that in the event of his failure to follow these instructions defendant would deem itself insecure and take steps to foreclose. The notice of foreclosure reads:

"That default now claimed consists in the failure of the mortgagor to himself properly care for said mortgaged property and in failing to remove therefrom the lien of George E. Johnston against the same incurred in the removal of said John Casper and family and property from said premises and for storing and caring for the bulk thereof on said premises, and in failing to prevent the

accumulation of said lien and in failing to pay the said mortgage indebtedness declared to be payable forthwith \* \* \*."

In the light of the showing that defendant deemed itself insecure because the chattels were under the control of the sheriff, claiming a lien on behalf of Johnston, it seems clear that defendant did not deem itself insecure from the fact alone that plaintiff's farm was under foreclosure. At most, it was a question for the jury as to whether or not the fact that plaintiff had falsely represented the status of the farm mortgage even entered into defendant's considerations in declaring itself insecure. If defendant did not consider that circumstance sufficient to justify foreclosure, it cannot urge the court to be more solicitous of its security than it was itself. The record presents no fact which must be taken at all events to have endangered defendant's security, and the question was therefore one for the jury.

Other questions which do not merit separate discussion have been considered.

The order granting judgment notwithstanding the verdict is reversed, without precluding a reconsideration of the motion for new trial. See State ex rel. Olson v. District Court, 196 Minn. 56, 263 N. W. 908.

Reversed.