ANTON AND MARY ZINS v. ELMER H. JUSTUS
AND ANOTHER.
STEWART McDONALD, RESPONDENT.[1]

July 11, 1941.

Nos. 32,859, 32,860.

[1]Reported in 299 N. W. 685.

*Quigley, Donohue & Quigley,* for appellants.

*Victor E. Anderson,* United States District Attorney, and *William P. Murphy,* Assistant United States District Attorney, for respondent Federal Housing Administrator.

GALLAGHER, CHIEF JUSTICE.

These are companion cases in which plaintiffs, husband and wife, seek to recover damages arising out of a collision between an automobile owned and operated by the husband, Anton Zins, and one owned and operated by the defendant Elmer H. Justus. Defendant McDonald demurred to the complaint in each case on the ground that it did not state a cause of action. These appeals are from orders sustaining the demurrers. As the cases must stand or fall together, we will confine discussion to the husband's case.

The allegations of the complaint upon which decision hinges are that defendant McDonald at all times here important was administrator of the Federal Housing Administration and, as such, exercised all of the powers given by law to the Federal Housing Administration; that in his capacity as administrator and in behalf of the Federal Housing Administration, McDonald employed Justus, who at the time of the acts of negligence herein complained of was the owner of an automobile which he was using in the course and scope of his employment, with the knowledge and consent of McDonald and at his direction; that while so doing Justus so negligently and carelessly operated said automobile that it collided with plaintiff's automobile, causing the damages here involved.

The sole question presented is whether the administrator is liable for the tortious acts of his agent committed in the course of the agent's employment. Defendant McDonald contends that the Federal Housing Administration is a component part of the sovereign government and that, as such, both it and he, as its administrator, are entitled to immunity from suit in tort. Plaintiff claims that the Administration is merely an agency of government engaged in semicommercial enterprises and that congress has expressly made

it and its administrator subject to suit both in contract and in tort.

The Federal Housing Administration was created by an act of congress known as "National Housing Act." It is entitled, "An act to encourage improvement in housing standards and conditions, to provide a system of mutual mortgage insurance, and for other purposes." Section 1 of Title I (Act of June 27, 1934, c. 847; 48 St. 1246, 12 USCA, § 1701, *et seq.*)[2] authorized the President to create a Federal Housing Administration, "all of the powers of which shall be exercised by a Federal Housing Administrator." That section was amended in 1935 (Act of August 23, 1935, c. 614; 49 St. 684, 722, § 344) by adding thereto the provision that "the Administrator shall, in carrying out the provisions of this title and titles II and III, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal."

---

[2]"Section 1. The President is authorized to create a Federal Housing Administration, all of the powers of which shall be exercised by a Federal Housing Administrator (hereinafter referred to as the 'Administrator'), who shall be appointed by the President, by and with the advice and consent of the Senate, shall hold office for a term of four years, and shall receive compensation at the rate of $10,000 per annum. In order to carry out the provisions of this title and titles II and III, the Administrator may establish such agencies, accept and utilize such voluntary and uncompensated services, utilize such Federal officers and employees, and, with the consent of the State, such State and local officers and employees, and appoint such other officers and employees as he may find necessary, and may prescribe their authorities, duties, responsibilities, and tenure and fix their compensation, without regard to the provisions of other laws applicable to the employment or compensation of officers or employees of the United States. The Administrator may delegate any of the functions and powers conferred upon him under this title and titles II and III to such officers, agents, and employees as he may designate or appoint, and may make such expenditures (including expenditures for personal services and rent at the seat of government and elsewhere, for law books and books of reference, and for paper, printing, and binding) as are necessary to carry out the provisions of this title and titles II and III, without regard to any other provisions of law governing the expenditure of public funds. All such compensation, expenses, and allowances shall be paid out of funds made available by this Act."

Section 2 authorized the administrator to insure banks and other financial institutions engaged in the loaning of money for home improvements against losses on loans made for such purposes. The insurance granted under this section to any such financial institution was not to exceed 20 per centum of the total amount of loans, advances of credit, and purchases made by any such financial institution for such purpose, and the total liability of the administrator for such insurance was in no case to exceed in the aggregate $200,000,000. No insurance was to be granted under the section to any financial institution with respect to any obligation representing any such loan, advance of credit, or purchase by it the face amount of which would exceed $2,000; nor unless the obligation would bear such interest, have such maturity, and contain such other terms, conditions, and restrictions as the administrator would prescribe.

Section 3 authorized the administrator to make loans to institutions insured under § 2, and to enter into loan agreements with such institutions upon the security of obligations which would meet the requirements prescribed under § 2.

Section 203 (a) of Title II authorized the administrator to insure mortgages within the limitations prescribed therein.

Section 301 (a) of Title III empowered the administrator to provide for the establishment of national mortgage associations and authorized him (1) to purchase and sell first mortgages and other first liens and (2) to borrow money for such purposes through the issuance of notes, bonds, debentures, or other obligations referred to in the act.

It is fundamental that the United States cannot be sued without its permission. United States v. McLemore, 4 How. 286, 11 L. ed. 977; Hill v. United States, 9 How. 386, 13 L. ed. 185; *The Western Maid,* 257 U. S. 419, 42 S. Ct. 159, 66 L. ed. 299; North Dakota-Montana W. G. Assn. v. United States (8 Cir.) 66 F. (2d) 573, 92 A. L. R. 1484. But this suit is not against the United States as such. It is against an agent of the government, in his

official capacity, and an employe of the agent, for a tort committed by the employe in the course of his employment and in the furtherance of his master's business. The sovereign immunity of the United States does not extend to its agents, individual or corporate. United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 27 L. ed. 171; Sloan Shipyards Corp. v. U. S. Shipping Board Emergency Fleet Corp. 258 U. S. 549, 42 S. Ct. 386, 66 L. ed. 762; Belknap v. Schild, 161 U. S. 10, 16 S. Ct. 443, 40 L. ed. 599. In Sloan Shipyards Corp. v. U. S. Shipping Board Emergency Fleet Corp. *supra*, Mr. Justice Holmes, speaking for the court, said (258 U. S. 566, 42 S. Ct. 388, 66 L. ed. 762):

"The sovereign properly so called is superior to suit for reasons that often have been explained. But the general rule is that any person within the jurisdiction always is amenable to the law. If he is sued for conduct harmful to the plaintiff his only shield is a constitutional rule of law that exonerates him. Supposing the powers of the Fleet Corporation to have been given to a single man we doubt if anyone would contend that the acts of Congress and the delegations of authority from the President left him any less liable than other grantees of the power of eminent domain to be called upon to defend himself in court. An instrumentality of government he might be and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts."

Our problem here is to determine whether in creating the Federal Housing Administration congress intended that it and its administrator be immune from suit for torts. In determining that question we are aided by a recent decision of this court (Casper v. Regional Agricultural Credit Corp. 202 Minn. 433, 278 N. W. 896) and by late decisions of the United States Supreme Court (Federal Housing Administration v. Burr, 309 U. S. 242, 60 S. Ct. 488, 84 L. ed. 724; Keifer & Keifer v. Reconstruction Finance Corp. 306 U. S. 381, 59 S. Ct. 516, 83 L. ed. 784; Federal Land Bank v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 79 L. ed. 1408).

In Casper v. Regional Agricultural Credit Corp. *supra*, we held that Regional Agricultural Credit Corporations are not immune from suit for tort. There the Regional was created by the Reconstruction Finance Corporation pursuant to 47 St. 713, § 201(e), of the act (15 USCA, § 605b[e]) under which the Reconstruction Finance Corporation was organized. 15 USCA, §§ 601-617. That act provided that the Reconstruction Finance Corporation "may sue and be sued," but it contained no express provision authorizing Regionals to sue and be sued. We held that the authorization conferred on the parent corporation carried with it the inference that the Regionals might also sue and be sued. This construction of the law was later approved by the United States Supreme Court in Keifer & Keifer v. Reconstruction Finance Corp. 306 U. S. 381, 59 S. Ct. 516, 83 L. ed. 784. While the court held that the action there involved was in contract rather than in tort, it took the pains to point out that the same rule would be applied in a tort action. In discussing the question Mr. Justice Frankfurter said (306 U. S. 395, 59 S. Ct. 521, 83 L. ed. 784) :

"To assume that Congress in subjecting these recently created governmental corporations to suit meant to enmesh them in these procedural entanglements, would do violence to Congressional purpose. When it chose to do so, Congress knew well enough how to restrict its consent to suits sounding only in contract, even with all the controversies in recondite procedural learning that this might entail. It did so with increasing particularity in the successive Court of Claims Acts. 10 Stat. 612; 24 Stat. 505; 28 U. S. C. §§ 41 (20), 250 (1). In the light of these statutes it ought not to be assumed that when Congress consented 'to suit' without qualification, the effect is the same as though it had written 'in suits on contract, express or implied, in cases not sounding in tort.' No such distinction was made by Congress, and no such interpolation into statutes has been made in cases affecting government corporations incorporated under state law or that of the District of Columbia. There is equally no warrant for importing

such a distinction here. To do so would make application of a steadily growing policy of governmental liability contingent upon irrelevant procedural factors. These, in our law, are still deeply rooted in historical accidents to which the expanding conceptions of public morality regarding governmental responsibility should not be subordinated."

The Keifer case was reaffirmed by the United States Supreme Court in Reconstruction Finance Corp. v. J. G. Menihan Corp. 312 U. S. 81, 83, 61 S. Ct. 485, 486, 85 L. ed. 595, 597, where the court, speaking through Chief Justice Hughes, said:

"We have had recent occasion to consider the status, in relation to suits, of a regional corporation chartered by the Reconstruction Finance Corporation and we have set forth the general principles which we think should govern in our approach to the particular question now presented. Keifer & Keifer v. Reconstruction Finance Corporation, 306 U. S. 381 [59 S. Ct. 516, 517, 83 L. ed. 784]. In the Keifer case we did not find it necessary to trace to its origin the doctrine of the exceptional freedom of the United States from legal responsibility, but we observed that 'because the doctrine gives the government a privileged position, it has been appropriately confined.' Hence, we declared that 'the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work.' *Id.* [306 U. S.] p. 388 [59 S. Ct. p. 517, 83 L. ed. 784]. Recognizing that Congress may endow a governmental corporation with the government's immunity, we found the question to be 'Has it done so?'

\* \* \*

"Starting from the premise indicated in the Keifer case that waivers by Congress of governmental immunity from suit should be liberally construed in the case of federal instrumentalities— that being in line with the current disfavor of the doctrine of governmental immunity—we concluded that in the absence of a contrary showing 'it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it

with authority to "sue and be sued" that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.' Following that reasoning, the precise point of the decision was that the words 'sue and be sued' normally embrace all civil process incident to the commencement or continuance of legal proceedings and hence embraced garnishment as part of that process."

The court reached the same conclusion in Federal Housing Administration v. Burr, 309 U. S. 242, 60 S. Ct. 488, 84 L. ed. 724, where the question presented was whether the Federal Housing Administration was subject to garnishment for money due an employe. The supreme court of Michigan held that it was. Burr v. Heffner, 289 Mich. 91, 286 N. W. 169. In affirming the Michigan court, Mr. Justice Douglas, speaking for the United States Supreme Court, said (309 U. S. 245, 60 S. Ct. 490, 84 L. ed. 724):

"As indicated in Keifer & Keifer v. Reconstruction Finance Corp., *supra*, we start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. Keifer & Keifer v. Reconstruction Finance Corp., *supra*. Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued,' it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a

narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be."

In discussing the effect of the expression "to sue and be sued" the court said (309 U. S. 246, 60 S. Ct. 491, 84 L. ed. 724): "Hence, in absence of special circumstances, we assume that when Congress authorized federal instrumentalities of the type here involved to 'sue and be sued' it used those words in their usual and ordinary sense."

In Weston v. City Council, 2 Pet. 449, 464, 7 L. ed. 481, Chief Justice Marshall defined the term "suit" as used in the 25th section of the Judicial Act of 1789, 1 St. 85: 

"The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a Court of Justice, by which an individual pursues that remedy in a Court of Justice which the law affords him. The modes of proceeding may be various, but if a right is litigated between parties in a Court of Justice, the proceeding by which the decision of the Court is sought is a suit."

Federal Land Bank v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 79 L. ed. 1408, held that Federal Land Banks, although federal instrumentalities, engaged in the performance of important governmental functions, having some of the characteristics of private business corporations, are liable to suit.

Defendant relies on a number of cases which he contends support his claims. White v. Alabama Insane Hospital, 138 Ala. 479, 35 So. 454; Bush v. State Highway Comm. 329 Mo. 843, 46 S. W. (2d) 854; Riddoch v. State, 68 Wash. 329, 123 P. 450, 42 L.R.A.(N.S.) 251, Ann. Cas. 1913E, 1033; *The Western Maid,* 257 U. S. 419, 42 S. Ct. 159, 66 L. ed. 299; North Dakota-Montana W. G. Assn. v. United States (8 Cir.) 66 F. (2d) 573, 92 A. L. R. 1484; Underhill v. State, 208 Minn. 498, 294 N. W. 643; Lyle v. National Home for Disabled Volunteer Soldiers (C. C.) 170 F.

10

842; Carver v. Haynes (D. C. Cal.) 37 F. Supp. 607; and Holzworth v. State, 238 Wis. 63, 298 N. W. 163. These cases are all distinguishable. Most of them are against the sovereignty or an agency thereof engaged strictly in governmental functions. Of the recent cases, Holzworth v. State, *supra*, involved an action against the state of Wisconsin and the regents of the University of Wisconsin arising out of injuries sustained by a football spectator when he was pushed over the edge of an exit at Camp Randall stadium because of the pressure of a crowd attending a football game. It was held that under a statute providing that on refusal of the legislature to allow a claim against the state claimant may commence an action against the state by serving summons and complaint, the word claim applies only to claims which, if valid, render the state a debtor and not to equitable claims or claims for tort by officers of the state. The Wisconsin court adhered to the rule that no cause of action exists against the state on account of the wrongful acts of its officers or agents unless the state has clearly and definitely consented that it shall be so liable and held that the state had not consented to suit against it on the action there involved. No reference was made in the opinion to any of the cases relied upon by plaintiffs in these actions.

Carver v. Haynes, *supra*, was an action for personal injuries and damages resulting from a collision with a truck operated by a WPA worker who at the time was engaged in the course of his employment by the Federal Works Administration and the Works Progress commissioners. In a lengthy opinion the court reviewed the cases touching the question of sovereign immunity from suit and held that there was no authority to maintain the action either by act of congress or by executive order.

The Federal Housing Administration, although a government instrumentality engaged in the performance of important governmental functions, has many of the characteristics of private business corporations. It is authorized to enter the field of insurance, a purely private enterprise. It may, and does, compete with pri-

vate loan agencies. In the establishment of National Mortgage Associations it is permitted to borrow from the public and loan the money so borrowed back to the public. These activities are all of a commercial or semicommercial nature and are in direct competition with private corporations engaged in like enterprises. We believe that congress, when it created the Federal Housing Administration and launched it in the commercial field, did not intend to immunize it, its administrator, and the latter's agents and employes from suit for torts. If it had such intention, it could and no doubt would have done so by direct provision.

We are not here concerned with whether plaintiff may enforce a judgment he may procure against the administrator. That question is not before us. The limit of our responsibility here is to determine whether the complaint states a cause of action against defendant McDonald, and we hold that it does.

The orders appealed from are reversed.

STONE, JUSTICE (dissenting).

Congress has not yet declared that a federal official may be sued for the tort of his employe or subordinate. Therefore I dissent.

