Jerald MILLER, on Behalf of Himself and as Parent and Guardian Ad Litem of His Natural Son, Troy Miller, and Carol Miller, Respondents,

v.

Shelley N. CHOU et al., Defendants,

Regents of the University of Minnesota, Appellant.

No. 46755.

Supreme Court of Minnesota.

June 3, 1977.

J. H. Geraghty, Sp. Atty., and David C. Hutchinson, St. Paul, R. Joel Tierney, University Atty., Minneapolis, for appellant.

Fredrikson, Byron, Colborn, Bisbee & Hansen and Terence M. Fruth and Neil A. Weikart, Minneapolis, for respondents.

DeParcq, Anderson, Perl, Hunegs & Rudquist, Richard G. Hunegs and J. Michael Egan, Minneapolis, amicus curiae seeking affirmance.

KELLY, Justice.

This is an appeal from denial of a motion for summary judgment in Hennepin County District Court, which order certified the issue of the immunity of the Regents of the University of Minnesota as important and doubtful. Pursuant to Rule 103.03(i), Rules of Civil Appellate Procedure, the Regents appeal. We remand for further proceedings.

In June 1973, plaintiffs Jerald and Carol Miller were referred for the care of their newly born son to the University of Minnesota Hospitals by a doctor in St. Cloud. Troy Miller, then 1-day old, was admitted to the hospital with an enlarged head. His condition was diagnosed as hydrocephalus and he was discharged. Plaintiffs allege that Troy's enlarged skull was due instead to a cyst on the brain and that with proper diagnostic tests and care, permanent injury to Troy could have been averted.

Plaintiffs commenced this medical malpractice action in June 1975 against certain physicians and staff members of the University of Minnesota Hospitals and, via respondeat superior, the Regents of the University. They alleged that defendant physicians were negligent in diagnosing Troy's condition and in failing to provide adequate follow-up instructions after his discharge. Plaintiffs prayed for $2,045,000 in damages.

In its answer, the Regents denied that the hospital was negligent in treating Troy and affirmatively alleged that it was immune and had not consented to suit. It moved for summary judgment on the ground of sovereign immunity to actions in tort and denial of that motion engendered the questions to be resolved on this appeal:

(1) Does the Minnesota Constitution provide that the Board of Regents of the University of Minnesota has no immunity to actions in tort?

(2) Did the district court properly apply the decision in *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975), which prospectively abrogated the sovereign immunity of the state?

(3) Is the Board of Regents engaged in a proprietary or governmental activity in operating University of Minnesota Hospitals?

■ The Regents of the University of Minnesota is a unique entity, being both a constitutional corporation and an agency of the state. *Bailey v. University of Minnesota*, 290 Minn. 359, 187 N.W.2d 702 (1971); *State ex rel. University of Minnesota v. Chase*, 175 Minn. 259, 220 N.W. 951 (1928). The hybrid status of the Board of Regents is intimately involved in this appeal.

■ Amicus curiae asserts that the Minnesota Constitution provides that the Board of Regents has no immunity to actions brought in tort. The Board of Regents was established by the territorial legislature in 1851. Laws 1851, c. 3. Section 7 of that act (also known as the University charter) provides:

"The Regents of the University and their successors in office, shall constitute a body corporate, with the name and style of the 'Regents of the University of Minnesota,' *with the right as such, of suing and being sued, of contracting and being contracted with*, of making and using a common seal, and altering the same at pleasure." (Italics supplied.)

Six years later, the powers of the Regents were enshrined in the state constitution:

"The location of the University of Minnesota, as established by existing laws, is hereby confirmed, and said institution is hereby declared to be the University of the State of Minnesota. *All the rights, immunities, franchises and endowments heretofore granted or conferred are hereby perpetuated unto the said university;* and all lands which may be granted hereafter by Congress, or other donations for said university purposes, shall vest in the institution referred to in this section." (Italics supplied.) Minn.Const.1857, art. VIII, § 4.

Minn.Const.1857, art. VIII, § 4, was renumbered in 1962 as art. VIII, § 3; and renumbered and simplified in 1974 as art. XIII, § 3. The constitution added nothing to the Regents' powers; it merely perpetuated the powers the Regents already possessed and

made them of constitutional stature. See, e.g., *State ex rel. University of Minnesota v. Chase*, 175 Minn. 259, 266, 220 N.W. 951, 954 (1928); *State ex rel. Peterson v. Quinlivan*, 198 Minn. 65, 268 N.W. 858 (1936).

■ Amicus curiae argues that the right "of suing and being sued" granted in L.1851, c. 3, § 7,[1] rendered the Regents amenable to tort liability. Since this right is enshrined by Minn.Const. art. XIII, § 3, the Board of Regents is asserted to be constitutionally without immunity to actions brought in tort.[2] The difficulty with this argument lies in its initial premise.

Other courts have had occasion to construe "sue and be sued" clauses and a majority has found that the clause alone does not subject a governmental unit to tort liability. Some courts, frowning on the doctrine of immunity, have in recent times interpreted such a clause in a statute liberally to find a waiver of immunity.[3] Three interdependent rationales have been offered for the majority result. First, courts have distinguished between immunity from suit and immunity from tort liability. Although a "sue and be sued" clause indicates consent to suit, the clause itself does not expand a governmental unit's liability and, absent a further provision waiving tort immunity, the unit's immunity for torts is unaffected.[4] This result is reached even where, as here, the right of contracting and being contracted with is also granted the governmental unit. See, *Shaffer v. Monongalia General Hospital*, 135 W.Va. 163, 62 S.E.2d 795 (1950). Second, a "sue and be sued" clause may be construed as enabling suit to be brought against the governmental unit as a separate legal entity. See, *University of Alaska v. National Aircraft Leasing, Ltd.*, 538 P.2d 121, 127 (Alaska 1975). At common law, an unincorporated association could neither sue nor be sued and had no legal identity apart from its members. *Bloom v. American Express Co.*, 222 Minn. 249, 251, 252, 23 N.W.2d 570, 572, 573 (1946). Thus, the clause might be thought to express only the inherent power of a corporation to be sued "as such" (Laws 1851, c. 3, § 7) as a distinct legal entity. 6 Fletcher, Cyclopedia of Private Corporations § 2485, p. 311 (1968 Rev.ed.). See, *State ex rel. Ryan v. Civil Service Commission*, 278 Minn. 296, 298, 154 N.W.2d 192, 194 (1967). The third rationale was stated by the court in *Overholser v. National Home for Disabled Volunteer Soldiers*, 68 Ohio St. 236, 250, 67 N.E. 487, 490 (1903), in discussing whether the National Home, a Federal corporation, could be sued for a tort:

" * * * The United States has consented to be sued on its contracts, * * but it has not yet consented to be liable for actions for torts. * * * Therefore, we are not persuaded by the argument that the power conferred upon this corpo-

---

1. In R.L. 1905, § 1470, the revisers omitted this and other language from the section. Because the instant argument is constitutionally based, that deletion is immaterial here. *Gleason v. University of Minnesota*, 104 Minn. 359, 362, 116 N.W. 650, 651 (1908).

2. It is clear that the Regents may be sued on a contract claim. *Regents of State University v. Hart*, 7 Minn. (Gil. 45) 61 (1862).

3. See, *Taylor v. New Jersey Highway Authority*, 22 N.J. 454, 468, 126 A.2d 313, 319 (1956); *Linger v. Pennsylvania Turnpike Commission*, 158 F.Supp. 900 (W.D.Pa.1958), effectively overruled by *Rader v. Pennsylvania Turnpike Commission*, 407 Pa. 609, 182 A.2d 199 (1962), reversed on other grounds, *Specter v. Commonwealth*, 462 Pa. 474, 341 A.2d 481 (1975). See, also, Restatement, Torts 2d § 895B, *comment a* (Tentative Draft No. 19).

Other courts have found that "sue and be sued" clauses together with additional indicia constitute a waiver of tort immunity. E. g., *Herrin v. Perry*, 254 La. 933, 948, 228 So.2d 649, 654 (1969) (explicit constitutional amendment). Cf. *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U.S. 381, 395, 59 S.Ct. 516, 521, 83 L.Ed. 784, 792 (1939). See, also, *Zins v. Justus*, 211 Minn. 1, 299 N.W. 685 (1941); *Casper v. Regional Agricultural Credit Corp.*, 202 Minn. 433, 278 N.W. 896 (1938); *Schultz v. Ruiz*, 281 Minn. 281, 161 N.W.2d 537 (1968).

4. E. g., *Robinson v. Washtenaw Circuit Judge*, 228 Mich. 225, 199 N.W. 618 (1924); *Todd v. Curators of University of Missouri*, 347 Mo. 460, 147 S.W.2d 1063 (1941); Annotation, 33 A.L.R.3d 703, 768; 57 Am.Jur.2d, Municipal, School, and State Tort Liability, § 64.

ration, *of suing and being sued both at law and in equity*, must be construed as a consent by congress that this particular governmental agency may be sued upon any cause of action, whether sounding in contract or in tort. On the contrary, *we are constrained * * * to regard this as imposing the power and liability to sue and be sued in respect to such matters only as are within the scope of the other corporate powers of the defendant. The National Home for Disabled Soldiers was not given the right to commit wrongs upon individuals. It was not contemplated that it would do so.* It was created and is perpetuated by the federal government for a very different purpose. Hence, it cannot be inferred that congress meant to impose a liability upon this corporation so unusual, so different from its general policy and so different from the liabilities imposed on other public agencies." (Italics supplied.)

This court has accepted the first rationale in an analogous situation. In *Bank v. Brainerd School District*, 49 Minn. 106, 51 N.W. 814 (1892), a child suffered a fractured leg by tripping over stumps in a school playground. A statute then provided in part: "*An action may be brought* against [trustees of a school district] in their official capacity, either upon a contract made by such officers in their official capacity, and within the scope of their authority, or *for an injury to the rights of the plaintiff, arising from some act or omission of such officers or of the district.*" (Italics supplied.) G.S. 1878, c. 36, § 117. The court reasoned that at common law a school district would

not be liable for negligence in failing to keep its property in repair and that the statute was not intended to change this result:

"* * * We doubt * * * if the legislature intended by this section to render school districts liable in actions for personal injuries for mere neglect to repair. * * * [By the statute] an action may be brought against [the trustees] upon a contract made with them in their official capacity, or for an injury to the rights of the plaintiff, arising from some act or omission of the officers or of the district. *In making this provision for bringing suits against trustees in their official capacity, the legislature has not changed the character of the duties of such trustees, or created any new duties or liabilities on the part of the district, in the case of the public property.* It is not, perhaps, entirely clear what was intended by the language, 'for an injury to the rights of the plaintiff,' but evidently it must refer to the breach of some duty owed to him as an individual, and not a mere public duty; and it would not operate, therefore, to change the rule." 49 Minn. 110, 51 N.W. 815. (Italics supplied.)

Accord, *Bang v. Independent School District No. 27*, 177 Minn. 454, 225 N.W. 449 (1929); *Allen v. Independent School Dist. No. 17*, 173 Minn. 5, 216 N.W. 533 (1927).[5]

We need not suggest what our opinion of a "sue and be sued" clause in a recently enacted statute might be. The provision in question was enacted and enshrined in the state constitution over a century ago when

---

5. *McCarthy v. State*, 280 Minn. 226, 158 N.W.2d 708 (1968), and *Westerson v. State*, 207 Minn. 412, 291 N.W. 900 (1940), might suggest that the court has abandoned the distinction between immunity from suit and immunity from liability. See, Peterson, *Governmental Responsibility for Torts in Minnesota*, 26 Minn. L.Rev. 700, 724; Note, 32 Minn.L.Rev. 539 (1948). These cases involved special legislation in which the state consented to suit by particular individuals. In both cases the court determined that the state's consent to suit also waived the state's tort immunity with respect to the plaintiffs. The court in Westerson noted: "We think it is apparent that the legisla-

ture intended to compensate for injury done by waiving its sovereign immunity to suit. To hold otherwise would virtually give plaintiff a mere right to sue but leave him with only a nonexistent cause. *Such a construction would amount to a total destruction of the obvious beneficent purpose of the act.*" (Italics supplied.) 207 Minn. 416, 291 N.W. 902. Because of the nature of the legislation at issue in *McCarthy* and *Westerson*, a finding that the state retained its tort immunity would have stripped the statutes of all but abstract meaning. This result does not occur when the University charter is so interpreted, and the situations are distinguishable on that basis.

the doctrine of sovereign immunity did not stand in general disfavor. We concur with the majority position and hold that the "sue and be sued" clause in the University charter does not itself render the Regents amenable to a suit in tort.

The district court did not rely on a constitutional waiver of tort immunity, instead it reasoned that the Regents, as an agency of the state, "became an historical beneficiary of the sovereign immunity of the state," which immunity was prospectively abrogated by this court in *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975). The district court then balanced the competing interests and equities to determine the point at which the Regents could no longer plead immunity. The court concluded that retrospective application of liability was unwarranted, but that the Regents should not be allowed to plead immunity in the instant case and suggested the same result in any case commencing after the date of its decision.

The district court erred in failing to follow the *Nieting* decision. There, a motor vehicle collision in April 1972 gave rise to a claim that the median barriers at the site of the accident were negligently designed, constructed, and maintained. The state was impled as a third-party defendant. This court stated:

"Although we firmly believe that retention of the state's tort immunity no longer served a useful purpose, we have reluctantly decided to deny relief to the third-party plaintiffs in this case. While it may appear unfair to deprive third-party plaintiffs of their right to litigate the question of the state's liability, we feel that it would be more unjust to deny the State of Minnesota the right to rely on a defense which was in existence at the time the underlying cause of action arose. This was the result reached in *Spanel*, and we feel the logic of this approach to be compelling. * * *

\* \* \* \* \* \*

"Similarly, in the instant case, we have concluded that we will abolish immunity prospectively so that the legislature may have an opportunity to resolve certain procedural questions which may be presented. Our decision will allow the legislature the opportunity to take affirmative action prior to the elimination of the sovereign immunity defense.

"We therefore abolish the tort immunity of the State of Minnesota with respect to tort claims arising on or after August 1, 1976, subject to any appropriate action taken by the legislature." 306 Minn. 131, 235 N.W.2d 603.

The legislature has taken the opportunity and enacted legislation implementing procedures to govern the state's liability for claims arising on or after August 1, 1976. Minn.St. 3.736. Claims against the University of Minnesota are included within these provisions. Minn.St. 3.732, subd. 1(1).[6]

In *Nieting* we balanced the competing considerations in determining the claims to which the sovereign immunity of the state should be abolished. The cause of action in the instant case arose in June 1973, more than 2 years before the *Nieting* decision. No persuasive reason appears for treating the state differently here. The state's reliance on immunity was no less reasonable in June 1973 than it was in April 1972.[7] The Regents' unique status as a constitutional corporation with autonomy to govern the affairs of the University does nothing to shift the balance nor does it negate the need for legislative attention to the procedural questions abrogation of immunity presents. Under *Nieting*, therefore, the Regents enjoyed immunity until August 1, 1976.

Plaintiffs advance as an alternative ground for affirmance the distinction between proprietary and governmental activi-

6. Since the instant cause of action arose before the effective date of these provisions, their interpretation is not before us.

7. *Johnson v. Callisto*, 287 Minn. 61, 176 N.W.2d 754 (1970) (suggesting that abolition of state immunity was a question for the legislature), was this court's last pronouncement on immunity before *Nieting*.

ties. In *Susla v. State*, Minn., 247 N.W.2d 907 (1976), this court held that sovereign immunity does not apply to torts arising from proprietary activities engaged in by the state. There, a prison factory was found to be a proprietary activity.

■ The decision in *Susla* was filed after the decision of the district court in this case, which did not have an opportunity to pass on this issue. For that reason and because the facts are inadequately developed on this record, we remand the issue to the district court. Authorities the court should consider in its decision include *Borwege v. City of Owatonna*, 190 Minn. 394, 251 N.W. 915 (1933) (operation of a municipal hospital was a proprietary function); *Swigerd v. City of Ortonville*, 246 Minn. 339, 75 N.W.2d 217 (1956) (same, by implication); *Gillies v. City of Minneapolis*, 66 F.Supp. 467 (D.Minn.1946) (operation of a municipal hospital was a governmental function); Minn.St. c. 158. The *Borwege* and *Gillies* decisions adequately reflect the proprietary-governmental distinction in this context.

Remanded for further proceedings not inconsistent with this opinion.

OTIS, J., took no part in the consideration or decision of this case.